UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SPRINT SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOBILE NOW, INC., et al., <br><br> Defendants. | Civil Action No. 19-3752 (JDB) |

## MEMORANDUM OPINION

Plaintiff Sprint Solutions, Inc. seeks a preliminary injunction enjoining defendant Mobile Now, Inc. and individual defendants Robert and Steven Qureshi from further dissipating what is left of the $11.2 million in funds that Sprint accidentally transferred to Mobile Now and that Mobile Now refuses to return. See Sprint's Mot. & Mem. of Law in Supp. of its Mot. for a TRO & Prelim. Inj. ("Pl.'s Br.") [ECF No. 2]. Sprint is pursuing its claims against Mobile Now through arbitration but seeks a preliminary injunction to ensure Mobile Now does not further dissipate the funds before an arbitrator decides the matter. Id. at 2. Mobile Now and the Qureshis claim that the money is rightfully theirs and oppose Sprint's motion. See Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Opp'n Br.") [ECF No. 16]. For the reasons explained below, the Court will grant Sprint's motion for a preliminary injunction, but only until an arbitration panel decides for itself whether Sprint should receive interim relief.

## BACKGROUND

### Sprint and Mobile Now Part Ways

From 2009 to April 2019, Mobile Now served as one of Sprint's largest "authorized representatives" distributing Sprint-branded telecommunications services and related products.

Decl. of Nathan McGrath [ECF No. 16-1] ¶ 4. In March 2018, the parties executed a new Authorized Representative Agreement that set forth the terms of the parties' business arrangement and granted Mobile Now the right to sell Sprint products and services. See Authorized Representative Agreement, Tab 1 to Compl. ("Agreement") [ECF No. 1-1]. Attached to the contract was a dispute-resolution agreement, in which the parties agreed to arbitrate "any controversy, dispute, or claim of every kind . . . and nature arising out of or relating to the negotiation, construction, validity, interpretation, performance, enforcement, operation, breach, continuation or termination of [the] Agreement, whether arising out of common law, state or federal law." Exhibit E: Dispute Resolution Agreement, Tab 2 to Compl. ("Arbitration Agreement") [ECF No. 1-1] ¶ 1.

In April 2019, Sprint terminated the Agreement with Mobile Now "for cause." McGrath Decl. ¶ 7. In response, Mobile Now sued Sprint in this Court, seeking close to $90 million in damages for wrongful termination in addition to $12 million for compensation that it claimed it was owed for services rendered before Sprint terminated the Agreement. Decl. of Adam Debernardis [ECF No. 16-2] ¶ 4. Sprint moved to compel arbitration pursuant to the parties' Arbitration Agreement, and this Court granted Sprint's motion and dismissed the case. See Mobile Now, Inc. v. Sprint Corp., 393 F. Supp. 3d 56, 60, 72 (D.D.C. 2019).

Meanwhile, Sprint was working to calculate its final payment to Mobile Now. Decl. of Matt Panther [ECF No. 2-1] ¶ 8. Section 15.2 of the Agreement authorizes Sprint to withhold, for up to 210 days, "all compensation due to [Mobile Now] by Sprint pending a final true-up." Agreement § 15.2. Under that section, Sprint may "offset all amounts owed by [Mobile Now] against the outstanding compensation due to [Mobile Now] by Sprint, and make a final payment, net of the offsets." Id. Amounts owed by Mobile Now may include, for example, "equipment

balances, advances, Losses, Expenses and 180-day deactivation Charge backs." Id. Section 6.2 of the Agreement also provides Sprint a right to "charge or withhold any amounts owed by [Mobile Now] . . . to Sprint (or any of Sprint's affiliates or subsidiaries)." Id. § 6.2.

Sprint determined that it owed Mobile Now $11,253,769.08 plus $117,201.45 in prepaid compensation, but then applied certain deductions equal to $2,598,538.40, resulting in a total sum of $8,772,432.13. Panther Decl. ¶ 9; Ex. 1 to Suppl. Decl. of Matt Panther [ECF No. 19-1]. Under Mobile Now's calculation, Sprint owed it $12.2 million. McGrath Decl. ¶¶ 12–13. The parties also disagreed as to whether Sprint could pay Mobile Now's earned compensation (regardless of whether it was $8.7 million or $12.2 million) to a third-party Sprint-affiliate named Brightstar, to which Mobile Now allegedly owed more than $17 million. McGrath Decl. ¶ 22; Panther Decl. ¶ 11. Both Sprint and Mobile Now had entered into contractual agreements with Brightstar, an equipment provider, and Sprint claims that its contract with Brightstar required Sprint to offset money that Mobile Now owed to Brightstar before making a "final payment" to Mobile Now. Panther Decl. ¶ 10; Debernardis Decl. ¶ 34.

A Mistaken Payment of $11.2 Million

Sprint, having determined that all of the money it owed Mobile Now needed to be paid towards Mobile Now's debt to Brightstar, scheduled the $8.7 million offset payment to Brightstar for November 8, 2019. Panther Decl. ¶ 13. In doing so, Sprint had to temporarily lift a vendor payment hold that had been placed on all payments to Mobile Now. Id. A technical glitch then caused Sprint's accounts payable vendor's software to misread the authorization for the $8.7 million offset payment as <u>also</u> authorizing the full $11.2 million that had been listed in the system as owed to Mobile Now before accounting for Sprint's deductions and the offset payment to Brightstar. Id. As a result, on November 8, Mobile Now wired the $8.7 million to Brightstar on

Mobile Now's behalf <u>and</u> wired $11.2 million to Mobile Now's account at Capital One bank, putting Sprint out almost $20 million in total. <u>Id.</u> ¶ 14. The funds were credited to Mobile Now's account on November 13. <u>Id.</u>

Mobile Now had received notification of the incoming payment on November 8 along with a detailed "Payment Advice" listing invoice dates and amounts being paid. McGrath Decl. ¶¶ 24–25. On November 13, Mobile Now "immediately accepted the payment" and applied the funds "to pay down Sprint's outstanding liabilities and unpaid invoices." <u>Id.</u> ¶ 29. Mobile Now used the funds to repay advances that Mobile Now's principals had made from their own personal funds so that Mobile Now could pay its employees and cover its leases. <u>Id.</u> Of the $11.2 million that was transferred, only about $4 million remains in an account maintained by Mobile Now's principals, <u>id.</u> ¶ 30, though some additional amount may remain in the Qureshis' accounts, <u>see</u> Proposed Order [ECF No. 22-1] ¶ 2.

<u>Sprint's Efforts to Reclaim its Mistaken Payment</u>

Sprint did not discover its $11.2 million-dollar error until November 19. Panther Decl. ¶ 15. At that time, Sprint did not contact Mobile Now about the mistaken payment. McGrath Decl. ¶ 32. Instead, Sprint tried to reverse the wire transfer, Panther Decl. ¶ 15, and when that didn't work, Sprint tried to recover some of the funds by initiating direct debits for various amounts against Mobile Now's bank account. <u>Id.</u> ¶ 16. It is Mobile Now's understanding that the bank referred Sprint's actions to its Fraud Department and alerted federal law enforcement. McGrath Decl. ¶ 35.

It was not until December 4 that Sprint informed Mobile Now of the mistaken payment and requested the return of funds. <u>See</u> Dec. 4, 2019 Letter, Tab 4 to Compl. [ECF No. 1-1] at 1–2. Mobile Now refused. <u>See</u> Dec. 6, 2019 Letter, Tab 5 to Compl. [ECF No. 1-1] at 1–3. At that

point, Sprint made a demand for arbitration, alleging that Mobile Now's decision to retain the funds constitutes a breach of contract, as well as wrongful trover, conversion, and unjust enrichment. Demand for Arbitration, Tab 3 to Compl. [ECF No. 1-1] at 1–2. On December 19, Sprint also filed a complaint against Mobile Now in this Court for refusing to return the $11.2 million, alleging the same claims it seeks to arbitrate: (1) breach of contract, (2) trover and conversion, and (3) quantum meruit and/or unjust enrichment. Compl. [ECF No. 1] ¶¶ 38–63. However, Sprint explained that it did not want this Court to decide the merits of those claims, and it instead sought only a temporary restraining order and preliminary injunction enjoining Mobile Now from dissipating the funds pending an arbitration panel's decision. Id. ¶ 70; Pl.'s Br. at 1–2.

Mobile Now agreed not to further dissipate the funds until after January 13, 2020, allowing this Court to dismiss the motion for a temporary restraining order as moot and decide only Sprint's motion for a preliminary injunction. See Order, Jan. 7, 2020 [ECF No. 11] at 1–2. The parties are proceeding with arbitration. While no arbitration panel has been appointed yet, an initial conference was set for January 3 and then continued to January 14, 2020. Sprint's Reply in Supp. of its Mot. for a Prelim. Inj. ("Reply Br.") [ECF No. 18] at 5. Thus, the question before this Court is whether it should grant Sprint's preliminary injunction and enjoin defendants from further dissipating the funds until an arbitration panel decides Sprint's underlying claims, or even just until an arbitration panel decides, for itself, Sprint's request for interim relief.

**LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the

5

merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (internal quotation omitted). "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." Abdullah v. Obama, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal quotation omitted).

Moreover, in the event that "parties have agreed to arbitrate a dispute, a court may issue an injunction if, in addition to the usual equitable concerns, the integrity of the arbitration process would be threatened absent interim relief." TK Servs., Inc. v. RWD Consulting, LLC, 263 F. Supp. 3d 64, 71 (D.D.C. 2017) (quoting Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv., 372 F. Supp. 2d 83, 90–91 (D.D.C. 2005)). Such "an injunction in aid of arbitration is appropriate . . . only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration," such that a favorable decision by an arbitrator "would be but an empty victory." Am. Postal Workers Union, 372 F. Supp. 2d at 90–91. "The arbitral process, however, is not rendered meaningless by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable.'" Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv., No. 19-2617, 2019 WL 5789965, at *5 (D.D.C. Nov. 6, 2019) (internal quotation marks, ellipses, and brackets omitted).

## ANALYSIS

All three of Sprint's claims—breach of contract, trover/conversion, and unjust enrichment—fall within the scope of Sprint and Mobile Now's arbitration agreement because they "aris[e] out of" the "performance" and "termination" of the Authorized Representative Agreement. Arbitration Agreement ¶ 1. The arbitration agreement does contain a carve-out that allows Sprint

to seek injunctive relief from a court, but only to protect it from a "breach, or threatened breach, of th[e] Agreement." Arbitration Agreement ¶ 6. Thus, this Court has jurisdiction to enter a preliminary injunction based on Sprint's breach of contract claim under the traditional preliminary injunction standard, but it may enter an injunction based on Sprint's other claims, for conversion or unjust enrichment, only "if, in addition to the usual equitable concerns, the integrity of the arbitration process would be threatened absent interim relief." TK Servs., 263 F. Supp. 3d at 71 (internal quotation omitted).[1]

Accordingly, the Court will proceed through the traditional four-factor test for a preliminary injunction and assess whether there is a threat to the integrity of the arbitration process itself in the context of the assessment of irreparable harm.

### A. Likelihood of Success on the Merits

On the merits, Sprint argues that Mobile Now's failure to return the mistaken payment is (1) a breach of the parties' contract; (2) trover and conversion; and (3) unjust enrichment. The Court evaluates Sprint's claims under Kansas law. See Agreement § 18.1 (stating the "Agreement is governed by the laws of Kansas"); Arbitration Agreement ¶ 3(D) (granting arbitrator authority "to grant all legal remedies consistent with . . . the law in Kansas").

---

[1] Mobile Now makes this very argument, see Opp'n Br. at 8, but then later claims that it is not contesting the Court's jurisdiction, see id. at 22. The Court understands Mobile Now's position to be that it would welcome this Court to exercise jurisdiction over all of the claims between Mobile Now and Sprint, but that Sprint cannot selectively enforce the arbitration agreement when it is convenient for Sprint. See id. at 8–9 ("Sprint's spurious allegations against Mobile Now of trover, conversion, quantum meruit and unjust enrichment are subject to [the Arbitration Agreement]—unless Sprint desires to litigate all claims in this Court, including Mobile Now's claims against Sprint."). The Court agrees: Sprint can't have it both ways. Because Sprint is enforcing the arbitration agreement, this Court is limited to granting injunctive relief to (1) protect Sprint from a breach or threatened breach of the Agreement or (2) preserve the integrity of the arbitration process.

7

*i. Sprint's Breach of Contract Claim*

The Court first considers Sprint's breach of contract claim. Sprint argues that Mobile Now's refusal to return the $11.2 million is a breach of contract because the parties' 2018 Agreement "makes clear how a final payment would be determined and when a final payment could be subject to offset," and that the final payment to Mobile Now "was uncontrovertibly subject to the offset provision in Section 6.2." Pl.'s Br. at 8.

However, even assuming that Sprint had the right under § 6.2 to offset the money that Mobile Now owed to Brightstar, that does not mean that Mobile Now breached the contract by refusing to return the mistaken payment. Sections 15.2 and 6.2 give Sprint a <u>right</u> to offset or withhold compensation in certain circumstances, <u>see</u> Agreement § 15.2 ("Sprint reserves the right to hold. . . ."); § 6.2 ("Sprint may charge or withhold . . . ."), but no language in either section imposes an <u>obligation</u> on Mobile Now to <u>return</u> money that Sprint transferred to it. Sprint contends that the parties frequently returned overpayments to one another over the course of their business relationship. That may be, but at best those past interactions imply an obligation to return money when <u>both parties agree</u> that there was an overpayment. That is not the situation here.

Mobile Now contends that it was due the $11.2 million under the Agreement. While Sprint undoubtedly overpaid by transferring $11.2 million to Mobile Now while <u>also</u> transferring $8.7 million to Brightstar on Mobile Now's behalf, Mobile Now contends that Sprint had no right to pay Mobile Now's earned compensation to Brightstar. From Mobile Now's perspective, it received no more money (in fact, less money) than it was owed. Sprint cannot point to any provision of the contract where Sprint and Mobile Now agreed that a party must return a mistaken payment even when the party believes it is owed the payment. There is, in short, nothing in the contract that was allegedly breached. Therefore, the Court cannot conclude that Sprint is likely to

succeed on the merits of its breach of contract claim against Mobile Now. See Potter v. N. Nat. Gas Co., 441 P.2d 802, 806 (Kan. 1968) ("Words cannot be read into a contract which import an intent wholly unexpressed when it was drawn and executed. The court may not make an agreement for the parties which they did not make themselves." (internal quotation omitted)).

*ii. Sprint's Unjust Enrichment Claim*

The Court next turns to Sprint's unjust enrichment claim. Sprint argues that it is inequitable under the doctrine of unjust enrichment for Mobile Now to retain the $11.2 million mistaken payment, especially when Sprint also paid Brightstar $8.7 million on Mobile Now's behalf. Pl.'s Br. at 10. "The elements of an unjust enrichment claim are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated or acknowledged the benefit; and (3) under the circumstances, it would be inequitable to allow the defendant to retain the benefit without paying for its value." Batman v. Deutsch, 423 P.3d 1062 (Table), 2018 WL 4038983 at *6 (Kan. Ct. App. 2018) (per curiam). Here, Sprint has conferred a benefit on Mobile Now in the form of $11.2 million, and Mobile Now accepted the benefit. The question, then, is whether it is likely inequitable to allow Mobile Now to retain the benefit.

Under Kansas law, it is generally inequitable and a form of unjust enrichment for a party to retain a mistaken payment. See Batman, 2018 WL 4038983 at *7–10 (affirming district court's finding of unjust enrichment based on mistaken royalty payment); see also Waechter v. Amoco Prod. Co., 537 P.2d 228, 251 (Kan. 1975) ("[W]here excessive payments have been made in good faith, it is generally held that the lessee (or purchaser) who has made such payments may recover from the payee the payments to which he was not entitled."). Here, it is very likely that Sprint's wire transfer of $11.2 million to Mobile Now was a mistake. Sprint has explained in detail, and by sworn declaration, how a confluence of factors—including system maintenance, a delayed

9

overnight payment cycle, an off-duty contractor, and the temporary lift on Mobile Now's account that was required to pay Brightstar the $8.7 million on Mobile Now's behalf—caused an erroneous payment of $11.2 million to Mobile Now. See Suppl. Decl. of Brian Jurgensmeyer [ECF No. 19-2] ¶¶ 13–17.

Furthermore, Sprint ended up paying much more than what even Mobile Now claims to be owed because Sprint wired $11.2 million to Mobile Now at the same time that it wired $8.7 million to Brightstar on Mobile Now's behalf. This further confirms that the transfer of the $11.2 million was likely a mistaken payment. There is no reason that Sprint would voluntarily pay much more than what was owed, and the record strongly indicates that Sprint intended to make the $8.7 million payment to Brightstar but not the $11.2 million payment to Mobile Now. This excessive payment is also a further reason why Mobile Now's retention of the mistaken payment likely constitutes unjust enrichment. If Mobile Now did in fact owe Brightstar $17 million, and the $8.7 million was transferred by Sprint in satisfaction of a portion of that amount, Mobile Now will have benefitted by approximately $8 million more than even Mobile Now has claimed to be owed. Sprint, therefore, makes a strong initial showing that Mobile Now's retention of the mistaken payment is likely inequitable and a form of unjust enrichment.

Mobile Now, however, raises the bona fide payee defense: it argues that it is not inequitable for it to retain the $11.2 million because it was owed at least that much. Opp'n Br. at 12. The Court agrees with Mobile Now that Kansas courts would likely apply the bona fide payee defense in § 67 of the Restatement (Third) of Restitution and Unjust Enrichment. See Ericsson Inc. v. Corefirst Bank & Tr., No. 15-9301, 2017 WL 3053646, at *3 (D. Kan. July 19, 2017), aff'd, 746 F. App'x 756 (10th Cir. 2018) (predicting Kansas courts would follow § 67); Ericsson, 746 F.

10

App'x at 759 n.2 (noting that Kansas Supreme Court decision in Kimmel v. Bean, 75 P. 1118, 1121 (Kan. 1904), "provide[s] further support for the district court's prediction").

Under the bona fide payee defense, "[a] payee without notice takes payment free of a restitution claim to which it would otherwise be subject, but only to the extent that . . . the payee accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor." Restatement (Third) of Restitution and Unjust Enrichment § 67 (2011). In other words, Mobile Now was not unjustly enriched if it received the mistaken payment of $11.2 million "in satisfaction or reduction of [its] valid claim as creditor" against Sprint. Id. (emphasis added).

Mobile Now claims that it had a valid claim to the $11.2 million because Sprint had no right to offset its final payment to Mobile Now by the amount that Mobile Now allegedly owed Sprint's affiliate, Brightstar.[2] Mobile Now argues that § 6.2 of the Agreement, which gives Sprint the right to offset payments due to its affiliates (like Brightstar), did not survive the termination of the Agreement because (1) that section is not listed in the Agreement's survival clause in § 18.11 and (2) § 15.2, which describes how to calculate the final post-termination payment, only authorizes offsetting amounts Mobile Now owes "to Sprint"—not Sprint affiliates. Opp'n Br. at 11–12.

The Court is not persuaded and concludes that Sprint likely did have a right to offset the amount Mobile Now owed to Sprint's affiliate, Brightstar. Section 18.11 of the Agreement says that obligations in various sections, including §§ 8, 9, 10, 12, and 13, "survive and continue in effect after this Agreement's termination or expiration." Agreement § 18.11. But the parties could

---

[2] In addition to challenging the offset payment to Brightstar, Mobile Now argues that Sprint wrongly offset $2.6 million in deductions and chargebacks. See Opp'n Br. at 9. However, if Sprint had not deducted the $2.6 million, Sprint would have just made a larger offset payment to Brightstar because Mobile Now allegedly owed Brightstar $17 million, far in excess of even the $12.2 million that Mobile Now claims it was owed. Panther Decl. ¶ 17. Even if Mobile Now could establish that Sprint wrongfully deducted $2.6 million, then, the $2.6 million would still not be owed directly to Mobile Now. Thus, whether Mobile Now was a bona fide payee owed the $11.2 million depends, critically, on whether Sprint had a right to offset the amount that Mobile Now allegedly owed Brightstar.

not have considered § 18.11 to be an exhaustive list of provisions that survive termination because the list does not even include § 15.2, which governs Sprint's rights and obligations with respect to calculating its final post-termination payment. Id. § 15.2; cf. Huffman v. Hilltop Cos., 747 F.3d 391, 397 (6th Cir. 2014) (holding "parties did not clearly intend for [a] survival clause to serve as an exhaustive list of the provisions that would survive" because a "non-compete clause remain[ed] in effect for twelve months after expiration, yet it [was] not listed in the survival clause").

Furthermore, § 15.2—which both parties agree is the operative provision in calculating the final payment owed to Mobile Now—effectively incorporates § 6.2 by reference. Section 15.2 says Sprint has the right to offset "amounts due to Sprint by [Mobile Now]" against "outstanding compensation due to [Mobile Now] by Sprint." Section 6 of the Agreement, in turn, is entitled "Compensation," and thus sheds light on the "outstanding compensation due" under § 15.2. Section 6.1 obligates Sprint to pay Mobile Now a monthly commission, and § 6.2 says "Sprint may charge or withhold any amounts owed by [Mobile Now] . . . to Sprint (or any of Sprint's affiliates or subsidiaries) under this or any other agreement between the Parties from any amounts Sprint owes [Mobile Now] under this Agreement." Agreement § 6.2 (emphasis added). Not only does § 6.2 dictate what Sprint owes Mobile Now and vice versa, but the sweeping language of the provision granting Sprint a right to offset money owed to its affiliates "from any amounts Sprint owes [Mobile Now] under this Agreement" suggests that the parties intended § 6.2 to apply to any obligation to pay Mobile Now under the Agreement. Thus, it is not likely that Mobile Now will succeed in arguing that Sprint's right to offset under § 6.2 does not apply to a final true-up under § 15.2 of the Agreement. Accordingly, Mobile Now has failed to show it is a bona fide payee, and Sprint has shown that it likely had the right to offset any amounts that Mobile Now owed to its affiliates.

Dating back to May 2019, Brightstar had represented to Sprint that Mobile Now owed Brightstar more than $17 million, and when Sprint informed Brightstar that Mobile Now had a final payment due to it in the amount of $8.7 million, Brightstar issued an invoice, on Mobile Now's behalf, to Sprint in that amount. Panther Decl. ¶¶ 11–12. Sprint claims that it was not only authorized under § 6.2 of the Agreement to offset the money Mobile Now owed to Brightstar, but that it was contractually obligated to Brightstar to do so before making any "final payment" under its Agreement with Mobile Now. Id. ¶ 10.

The Court understands that Mobile Now disputes the fact that it owes Brightstar $17 million and that Mobile Now has a lawsuit against Brightstar in the Northern District of Illinois in which it is seeking $22 million in damages. McGrath Decl. ¶ 40; see also Mobile Now's Complaint Against Brightstar, Ex. E to McGrath Decl. [ECF No. 16-1] ¶ 7. But Mobile Now has not presented the Court with an evidentiary record on which to assess this separate dispute with Brightstar. Further, Sprint was contractually obligated to Brightstar to offset amounts Mobile Now owed Brightstar and presented the Court with a declaration that states it was issued an invoice by Brightstar for $8.7 million to be paid on Mobile Now's behalf. Panther Decl. ¶¶ 10, 12. Mobile Now has not demonstrated why, in such circumstances, Sprint would be prohibited from offsetting the amount owed just because the amount was in dispute.

Thus, Mobile Now has not shown it is likely owed the $11.2 million. The bona fide payee defense is an affirmative defense for which Mobile Now bears the burden of proof. See Ericsson, 746 F. App'x at 761; Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006) ("[B]urdens at the preliminary injunction stage track the burdens at trial."). [3] At the

---

[3] There is also doubt as to whether Mobile Now was truly "[a] payee without notice," which is necessary to establish the bona fide payee defense in § 67 of the Third Restatement. Email exchanges from months before the wire transfer indicate that Mobile Now was aware that Sprint intended to offset the amount that Mobile Now allegedly

same time, Sprint has made a strong initial showing that Mobile Now's retention of the $11.2 million is likely inequitable and therefore a form of unjust enrichment. The payment was likely a mistake, Sprint had a right to offset the $8.7 million, and—at a minimum—Mobile Now, but for Sprint's mistake, would never have had immediate, unrestricted access to the $11.2 million before an arbitrator decided that amount was in fact owed to Mobile Now; that access is itself likely a form of unjust enrichment.

Finally, Sprint's initial showing of a likelihood of success on the merits of its unjust enrichment claim is sufficient because Sprint is not asking this Court to order Mobile Now to return the payment; it is merely asking this Court to ensure Mobile Now does not further deplete the funds before an arbitrator can decide who the mistaken payment belongs to. The Court could not—and should not—determine final entitlement to the $11.2 million at this stage. See Nat'l Ass'n of Letter Carriers, 2019 WL 5789965, at *4 ("[A] court must avoid reaching the merits of arbitrable disputes.") (internal quotation marks omitted); see also Sauer-Getriebe KG v. White Hydraulics, Inc., 715 F.2d 348, 352 (7th Cir. 1983) ("Although it is improper for a court to decide a contractual dispute relegated to arbitration, so far as the issuance of an injunction is concerned [plaintiff] has demonstrated enough probable success on the merits to warrant relief."); Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1385 (6th Cir. 1995) (same).[4]

---

owed Brightstar from Sprint's final payment to Mobile Now. See August 13, 2019 Email, Ex. C to McGrath Decl. [ECF No. 16-1].

[4] Because the Court concludes that Sprint has established enough of a likelihood of success on the merits of its unjust enrichment claim to satisfy the preliminary injunction standard, the Court need not consider Sprint's trover and conversion claim.

## B. Irreparable Harm

Sprint argues that it will suffer irreparable harm absent an injunction because Mobile Now will continue to dissipate the $11.2 million and Sprint will be unable to recover the funds later. Pl.'s Br. at 11–12. The Court agrees. Mobile Now has <u>already spent</u> approximately $7 million of the $11.2 million mistaken payment. McGrath Decl. ¶¶ 29–30. The money was used in part to repay principals that had provided the company with advances from their personal funds so that the company could pay its employees and leases. Id. ¶ 30. There is more than a "strong indication that the defendant may dissipate . . . assets" because Mobile Now has <u>already</u> dissipated approximately $7 million. <u>Micro Signal Research, Inc. v. Otus</u>, 417 F.3d 28, 31 (1st Cir. 2005).

Moreover, Mobile Now asserts that Sprint "crippled" its operations by terminating the Agreement. McGrath Decl. ¶ 40. And in a related action filed in March 2019, Mobile Now told this Court that it was "quickly dying as a viable business," that "it has terminated all but a handful of employees totaling approximately 470 employees terminated," and that it will be "forced to close the remaining 82 brick and mortar stores and shut down its ecommerce and phone sale portals." Complaint ¶¶ 1, 65, <u>Mobile Now, Inc. v. Sprint Corp.</u>, No. 19-918 (D.D.C. April 2, 2019). Mobile Now's only response to the argument that Sprint will not be able to recover later, absent an injunction, is that it "possesses choses in action worth . . . $90 million with real world value in excess of $11 million." Opp'n Br. at 15.[5] But this only highlights the fact that Mobile Now lacks liquid assets. Further, this Court is not in a position to assess Mobile Now's chances in litigation against Sprint and Brightstar and the likelihood that it will obtain net damages in excess of $11 million.

---

[5] Mobile Now also states that "the principals of Mobile Now are independently wealthy," McGrath Decl. ¶ 41, but there has been no assurance that Mobile Now's principals will personally repay Sprint if an arbitration panel orders Mobile Now to return the $11.2 million.

15

Mobile Now argues that a monetary loss is not irreparable harm but is instead "the stuff of a damages claim to be litigated (or arbitrated) in the ordinary course." Opp'n Br. at 13. But monetary loss is an irreparable harm "where the defendant would become insolvent or otherwise judgment-proof prior to the conclusion of litigation" or arbitration, "thus making the plaintiff's alleged damages unrecoverable." Carabillo v. ULLICO Inc. Pension Plan & Tr., 355 F. Supp. 2d 49, 55 (D.D.C. 2004), aff'd sub nom. Carabillo v. Ullico Inc., 198 F. App'x 1 (D.C. Cir. 2006); see also Hilao v. Estate of Marcos, 25 F.3d 1467, 1480 (9th Cir. 1994) ("[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant.").

Finally, the irreparable harm alleged here—the unrecoverable loss of $11.2 million—also threatens the integrity of the arbitration process. If Mobile Now dissipates the $11.2 million and is unable to satisfy payment to Sprint in the event that an arbitration panel decides that Mobile Now must return the $11.2 million, then the arbitration panel's decision will be "an empty victory," Am. Postal Workers Union, 372 F. Supp. 2d at 91, or a "hollow formality," Lever Bros. Co. v. Int'l Chem. Workers Union, Local 217, 554 F.2d 115, 123 (4th Cir. 1976). See also Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 53 (1st Cir. 1986) (granting preliminary injunction to preserve damages remedy in arbitration when record showed defendant company's limited assets were being used "to pay off creditors' claims and wind down expenses") (citing cases).

**C. Balance of Equities**

The Court must also "balance the competing claims of injury, which involves consider[ing] the effect on each party of the granting or withholding of the requested relief." Am. Meat Inst. v. U.S. Dep't. of Agric., 968 F. Supp. 2d 38, 81 (D.D.C. 2013) (internal quotation marks omitted). Here, the balance of equities strongly favors Sprint because Sprint stands to permanently lose

$11.2 million, whereas Mobile Now will—at worst—just have delayed access to the full $11.2 million. The injunctive relief requested would only require Mobile Now to hold off spending the remaining funds, approximately $4 million plus whatever amount remains with the individual defendants, until an arbitration panel decides whether to grant Sprint interim relief pending arbitration of the full dispute.

Mobile Now does not present evidence that it will suffer any significant, irreparable harm if it does not have immediate access to the funds. Instead, Mobile Now argues that the doctrine of unclean hands tips the balance of equities in its favor. Opp'n Br. at 16. Under that doctrine, a party may be denied equitable relief "on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." Goben v. Barry, 676 P.2d 90, 97 (Kan. 1984). "Equity will not permit a litigant to rely on his own wrongful conduct to recover." Id. The wrongful conduct, however, must relate to the issues in controversy. See id.

Mobile Now argues that Sprint comes to this Court with unclean hands because Sprint is making a "highly dubious" claim that it accidentally transferred $11.2 million to Mobile Now. Opp'n Br. at 16. But Sprint filed sworn declarations explaining its error in detail, see Jurgensmeyer Decl. ¶¶ 13–17, and there is no evidence to suggest Sprint is misleading the Court. Mobile Now further argues that, even if it was a mistake, Sprint should be barred from equitable relief because the mistaken payment was a "self-inflicted wound, born of its own gross incompetence." Opp'n Br. at 16. In balancing the equities, the Court certainly considers the fact that this dispute is of Sprint's own making. However, a mistake—even a very big one—does not rise to the level of "unfair and dishonest, or fraudulent and deceitful" conduct, Goben, 676 P.2d at 97, and Sprint will already suffer significant consequences for its mistake because Mobile Now has dissipated

approximately $7 million of the mistaken payment. Sprint is not asking this Court to make Mobile Now and the individual defendants return funds that have already been spent.

Finally, Mobile Now argues that Sprint should be barred from receiving equitable relief under the doctrine of unclean hands because Sprint attempted to debit for value Mobile Now's account in various amounts, without authorization, in an effort to reclaim its funds. McGrath Decl. ¶¶ 32–34. Sprint does not deny it did so. Panther Decl. ¶ 16. It is Mobile Now's understanding that the bank referred Sprint's actions to its Fraud Department and alerted federal law enforcement, McGrath Decl. ¶ 35, though Sprint claims it has no knowledge of any alert being sent to law enforcement.

The Court is concerned about Sprint's improper self-help tactics. But in its discretion, the Court will not bar Sprint from seeking equitable relief because the facts regarding law enforcement's involvement are murky, neither party has expounded on the applicable law, and Sprint's tactics were ineffective and did not contribute to Sprint's causes of action. In other words, Sprint is not "rely[ing] on [its] own wrongful conduct to recover." Goben, 676 P.2d at 97; see also Cent. United Life, Inc. v. Burwell, 128 F. Supp. 3d 321, 330 (D.D.C. 2015), aff'd sub nom. Cent. United Life Ins. Co. v. Burwell, 827 F.3d 70 (D.C. Cir. 2016) (concluding doctrine of unclean hands was inapplicable because there was "no causal relationship" between wrongful conduct and controversy). And as previously noted, Sprint is already paying the price (almost $7 million) for its decision to resort to improper self-help tactics before alerting Mobile Now of the mistaken payment. Thus, while Sprint may have made mistakes, the doctrine of unclean hands does not bar equitable relief, and the balance of equities nonetheless strongly favors Sprint.

### D. Public Interest

There is little public interest at stake in a monetary dispute between two private companies. Still, in this case, the public interest factor tips slightly in favor of injunctive relief because it would serve the public's interest in protecting the arbitration process. See Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc., 239 F. Supp. 3d 906, 916–17 (D. Md. 2017) ("The public has an interest in arbitration as a means of resolving labor disputes, and it has a concomitant interest in ensuring that the conditions of that arbitration result in meaningful, rather than hollow, resolution."); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344–45 (2011) (explaining arbitration "allow[s] for efficient, streamlined procedures tailored to the type of dispute" and "reduc[es] the cost and increase[es] the speed of dispute resolution").

\*       \*       \*

As discussed above, Sprint has made a sufficient initial showing that it is likely to succeed on its unjust enrichment claim because the payment was likely a mistake, Sprint likely had a right to offset the $8.7 million, and Mobile Now has failed to show it is likely a bona fide payee. The factors of irreparable harm, the balance of equities, and even the public interest also weigh in favor of granting the preliminary injunction requested by Sprint. Because Sprint demonstrated a likelihood of success on its unjust enrichment claim, which is fully subject to arbitration, this Court may grant injunctive relief to preserve the integrity of the arbitration process. See supra at 6–7. Accordingly, the Court will grant Sprint preliminary injunctive relief, but "once the arbitration begins, it is for the arbitrators to decide how to maintain the status quo during the pendency of the arbitration process." Performance Unlimited, 52 F.3d at 1386. "This approach will both minimize

the district court's involvement in the merits of this contractual dispute, and it will preserve the ability of the arbitration panel to fully address the merits of the dispute." Id.

## CONCLUSION

For the reasons explained, Sprint's motion for a preliminary injunction enjoining defendants from further dissipating whatever is left of the $11.2 million payment will be granted. A separate Order has issued on this date.

Dated: January 13, 2020

/s/
JOHN D. BATES
United States District Judge